UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HOMESITE INSURANCE COMPANY,

Plaintiff,

v.

JOSEPH M. ZAJAC, et al.,

Defendants.

C19-1034 TSZ

ORDER

THIS MATTER comes before the Court on Plaintiff and Counter Defendant Homesite Insurance Company's ("Homesite") Motion for Partial Summary Judgment, docket no. 27. Having reviewed all papers filed in support of and in opposition to the motion, the Court enters the following order.

**Background**

**A. 8059 West Mercer Way**

In 2005, Susan and Joseph Zajac ("the Zajacs") purchased a residential property, 8059 West Mercer Way ("the Property"). Ex. B to Second Amended Complaint,[1] docket no. 24-2 at ¶ 2.2. The Zajacs submitted a permit application with the City of Mercer Island to build a 450 square foot addition to the Property over the existing garage. *Id.* at

---

[1] Whether an indemnitor has a duty to defend must be determined from the facts known at the time the indemnitee requests a defense. *See Knipschield v. C-J Recreation, Inc.*, 74 Wn. App. 212, 216 (1994). The Court therefore restates and relies on the facts as stated in the complaint in the state court action, filed in this case as Exhibit B to the Second Amended Complaint, docket no. 24-4, for the purposes of ruling on the present Motion.

ORDER - 1

¶ 2.4.  The City issued at least two correction rounds in which they informed the Zajacs that they needed to fix an existing garage encroachment and other structural deficiencies in the existing garage before the City would issue the permits.  *Id.* at ¶ 2.5.  The Zajacs did not fix all of the deficiencies, cancelled their permit application in 2005 before it was approved, and built the addition anyway.  *Id.* at ¶¶ 2.6-2.7.

On April 27, 2017, Zajacs quitclaimed the Property to The Joseph M. Zajac and Susan P. Zajac Trust Dated April 12, 2017 ("the Trust")[2] and listed it for sale.  *Id.* at ¶¶ 2.8-2.9.  On March 8, 2018, the Zajacs, through the Trust, entered into a Residential Real Estate Purchase and Sale Agreement for the Property with Janet and William Feldmann ("the Feldmanns") for a purchase price of $2,595,000.  *Id.* at ¶ 2.10.  The Zajacs completed and signed a seller disclosure statement to make "disclosures of existing material facts or material defects" related to the Property.  *Id.* at ¶ 2.11.  In the statement, the Zajacs represented that there were no encroachments and that they did not know whether all building permits or final inspections for permits had been obtained.  *Id.* at ¶ 2.12.  The sale closed on April 4, 2018, and the Feldmanns took title to the Property through a statutory warranty deed.  *Id.* at ¶ 2.13.  The Feldmanns sought a permit from the City to repair and expand a deck on their new home but discovered that they could not do so until they resolved the deficiencies identified in the Zajacs' previous permit application and obtained a permit for the unpermitted 450 square foot addition above the garage.  *Id.* at ¶¶ 2.14-15.

---

[2] Susan and Joseph Zajac were married until their divorce in 2017.  Susan Zajac's Answer to Second Amended Complaint and Counterclaims, docket no. 25 at ¶ 9.

The Feldmanns sued Joseph M. Zajac, Susan P. Zajac, and the Joseph M. Zajac and Susan P. Zajac Trust in King County Superior Court in the case captioned *William and Janet Feldmann v. Joseph M. and Susan P. Zajac and The Joseph M. Zajac and Susan P. Zajac Trust Dated April 12, 2017*, Cause No. 19-2-07340-3 SEA (the "Underlying Action").  The Feldmanns brought claims for negligent and fraudulent misrepresentation, rescission, unjust enrichment, and fraudulent concealment.  *Id.* at ¶¶ 3.1-7.4.  The Zajacs tendered defense of these claims to Homesite Insurance.  On April 10, 2019, Homesite agreed to provide a defense in the Underlying Action subject to a full reservation of rights pertaining to coverage.  Ex. D to Second Amended Complaint, docket no. 24-4.  Homesite has, at all relevant times, defended the Zajacs and the Trust in the Underlying Action under a reservation of rights.  On July 3, 2019, Homesite commenced this action for a declaratory judgment that it has no duty to defend or indemnify the Zajacs for any of the claims in the Underlying Action.  Docket no. 1.

Homesite filed the Amended Complaint, docket no. 19, in response to the Feldmanns' newly alleged fraudulent concealment claim.  Susan Zajac answered the Amended Complaint, asserting counterclaims for breach of contract for failing to assign separate counsel for the Trust and Joseph Zajac and for violations of Washington's Insurance Fair Conduct Act ("IFCA"), RCW 48.30.015.  Docket no. 20.  Homesite filed a Second Amended Complaint, docket no. 24, to add a claim for declaratory judgment on the issue of whether the Trust and its trustees are "an Insured" entitled to coverage under the policy in response to Susan Zajac's counterclaims.  Susan Zajac answered the Second Amended Complaint, reasserting the IFCA and breach of contract claims.  Docket no. 25.

ORDER - 3

Defendants Joseph Zajac, the Trust, and the Feldmanns have not answered any of Homesite's three complaints.

**B. The Policy**

For the period April 1, 2017 – April 1, 2018, Homesite issued a Homeowners 3 Special Form Policy No. 34542855 (the "Policy") to the Zajacs that provided liability coverage. Ex. C to Second Amended Complaint,[3] docket no. 24-3 at 4. The relevant portion of the Policy, "Coverage E – Personal Liability" provides that

> If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "***property damage***" caused by an "***occurrence***" to which this coverage applies, we will . . . [p]ay up to our limit of liability for the damages for which an "insured" is legally liable . . . [and] [p]rovide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.

*Id.* at 39 (emphasis added). "Property damage" is defined as "physical injury to, destruction of or loss of use of tangible property." *Id.* at 23. "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in … 'property damage.'" *Id.*

The Policy itself, as well as an addendum, exclude intentional acts from coverage. *See id.* at 41 (exclusion for "property damage" which is expected or intended by an "insured"); *id.* at 50 (exclusion for intentional and malicious acts, which are defined in pertinent part as "'property damage' arising out [of] an intentional and malicious act by or at the direction of any 'insured.'"). The addendum to the Policy also contains an

---

[3] The Court relies on the policy at issue which is attached as Exhibit C to the Second Amended Complaint as evidence in support of the Motion pursuant to Fed. R. Civ. P. 56(c)(1)(A). Defendants cite to the policy, and do not dispute the terms of the policy or the veracity of the exhibit.

ORDER - 4

exclusion for claims "[a]rising out of any written or oral statement made by you or others on your behalf which is material to the sale of any property." *Id.*

**<u>Discussion</u>**

    **A. Standard of Review**

    The Court shall grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the adverse party must present affirmative evidence, which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn. *Id.* at 255. When the record, however, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted. *See Beard v. Banks*, 548 U.S. 521, 529 (2006) ("Rule 56(c) 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

    **B. An Insurer's Duty to Defend and Indemnify**

    Under Washington law, the duty to defend is different from and broader than the duty to indemnify. *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398, 404 (2010). Although the duty to indemnify arises only if the policy "*actually covers*" the

insured's liability, the duty to defend is triggered if the policy "*conceivably covers*" the allegations in the underlying complaint. *Id*. (emphasis in original). In evaluating whether the insurer owes a duty to defend, the Court must liberally construe the underlying complaint to determine whether the alleged facts could, if proven, impose liability on the insured that would be covered under the policy. *Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wn.2d 793, 802-03 (2014). If "any reasonable interpretation of the facts or the law" could result in coverage, the insurer must defend. *Am. Best Food*, 168 Wn.2d at 405. Whether an indemnitor has a duty to defend must be determined from the facts known at the time the indemnitee requests a defense. *See Knipschield*, 74 Wn. App. at 216.

In a declaratory action, the issue before the Court is whether coverage exists under the applicable policy for the various claims in the Underlying Action. This issue is dispositive of both the duty to defend and duty to indemnify. *See Travelers Property Cas. Co. of America v. Northwest Pipe Co.*, 2017 WL 2687652, at *4 (W.D. Wash 2017). The Court finds that there is no genuine dispute of material fact precluding summary judgment that Homesite has no duty to defend or indemnify the Zajacs in the Underlying Action.

**C. The Zajacs' Coverage Under the Policy**

    **a. There is no "property damage" caused by an "occurrence"**

The Policy provides liability coverage for "property damage" caused by an "occurrence." Ex. C to Second Amended Complaint, docket no. 24-3 at 39. Property damage is defined in the Policy as "physical injury to, destruction of, or loss of use of

ORDER - 6

tangible property." *Id.* at 23.  This language is clear and unambiguous,[4] and the Court must "enforce it as written and may not modify it or create ambiguity where none exists." *Weyerhaeuser Co. v. Com. Union Ins. Co.*, 142 Wn.2d 654, 665-66 (2000) (citations omitted).  Therefore, relying on the allegations in the complaint in the Underlying Action, as the Court must,[5] the Feldmanns do not allege that the Zajacs' failure to obtain the requisite permits, fix the deficiencies in the permit application, or to make accurate disclosures constitutes property damage as defined by the Policy.  Rather, the Feldmanns sued for damages for negligent misrepresentation, fraudulent misrepresentation, and fraudulent concealment, and in alternative, for rescission for the purchase of the property.

The Court also rejects the contention that the City's requirement to obtain proper permits and cure code violations before allowing the *Feldmanns* to complete their desired deck repair constitutes loss of use and diminished property value under the *Zajacs'* policy with Homesite.  Feldmanns' Opposition, docket no. 29 at 12.  The Zajacs could not have suffered the *Feldmanns'* alleged loss of use and diminished property value.  An

---

[4] The Court therefore declines to accept the Feldmanns' attenuated, multi-step analytical jump that "destruction" means merely "to diminish in quantity, value, excellence, or strength."  *See* Feldmanns' Opposition, docket no. 29 at 11-12.  That interpretation is also unsupported by case law interpreting insurance policies covering destruction to *tangible* property—such as the one here—as not covering mere diminution in value, which is an *economic* loss.  *See State Farm Fire and Cas. Co. v. Hardie,* 2018 WL 1211770, at *2 (W.D. Wash. March 8, 2018); *Safeco Ins. Co. v. Andrews*, 915 F.2d 500, 502 (9th Cir. 1990) (holding that the "claims do not expose [the seller] to liability for any damage to tangible property, but rather for economic loss resulting from [the seller's] alleged failure to discover and disclose facts relevant to the property's value and desirability").

[5] The Court cannot rely on the Feldmanns' new contentions in response to the Motion that were not included in the complaint of the Underlying Action that their use of the deck is limited until they can secure the necessary permits.  *See Am. Family Mut. Ins. Co. SI v. Bell*, 2019 WL 2339965, at *2 (W.D. Wash. June 3, 2019) ("In Washington, in a declaratory judgment action, the duty to defend is determined by the facts alleged in the complaint.").

ORDER - 7

uncovered claim does not become covered merely by conveying title. Thus, any diminished value the Feldmanns experienced is not covered under the Policy.

The alleged misrepresentations and failure to disclose do not constitute an occurrence as a matter of law. The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the [P]olicy period, in … 'property damage.'" Ex. C to Second Amended Complaint, docket no. 24-3 at 23. Even accepting the Feldmann's contention that the unpermitted addition and the deck that will deteriorate without repairs are "property damage" under the Policy (docket no. 29 at 13), the alleged "occurrence," the Zajac's misrepresentations regarding the unpermitted addition and code deficiencies (*id.* at 18), did not cause that damage. The Zajacs' misrepresentations may have induced the Feldmanns to buy the property, but the alleged property damage existed before the alleged occurrence.[6] *See Allstate Ins. Co. v. Bowen*, 121 Wn. App. 879, 886-88 (2004) (finding that misrepresentation did not cause physical property damage, but economic damages only).

### b. "Statements Material to Sale of Property" exclusion

The claims in the underlying complaint also fall under the "Statements Material to Sale of Property" exclusion, which excludes from coverage all damage "[a]rising out of any written or oral statement made by you or others on your behalf which is material to the sale of any property." Defendants contend that this exclusion applies only to

---

[6] Because the Court finds that there is no property damage caused by an occurrence, the Court does not reach the issue of whether the alleged damage occurred during the Policy period.

ORDER - 8

"affirmative statements" and therefore does not exclude the Zajacs' failure to disclose the Property's non-compliance in the disclosure statement. Feldmanns' Opposition, docket no. 29 at 21. Pursuant to RCW 64.06.020, a seller of real property has a duty to disclose material facts that may be discharged by completing the disclosure statement. "[O]nce a duty to speak is found, a seller's suppression of a material fact is tantamount to an affirmative misrepresentation." *Kaas v. Privette*, 12 Wn. App. 142, 147 (1974). The Zajacs' failure to make the requisite disclosures therefore falls under the "Statements Material to Sale of Property" exclusion to the Policy.

**D. Coverage by Estoppel**

The Court also rejects Defendant Susan Zajac's coverage by estoppel argument as a procedurally improper motion for partial summary judgment on her breach of contract and IFCA counterclaims against Homesite. Defendant Susan Zajac brought those counterclaims on the basis that Homesite failed to appoint separate counsel for Joseph Zajac and the Trust. Docket nos. 20 & 25. In response, Homesite amended the complaint to include a sixth cause of action for a declaratory judgment that the Trust is not an "insured" under the meaning of the Policy. Docket no. 24 at ¶¶ 81-88. Homesite notably did not move on the sixth cause of action or on Defendant Susan Zajac's breach of contract and IFCA claims in this present Motion for Partial Summary Judgment. Defendants' request that the Court find coverage by estoppel as a matter of law in

ORDER - 9

response to the Motion is procedurally improper, the resolution of which must await another day.[7]

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1)  Plaintiff and Counter Defendant Homesite's Motion for Partial Summary Judgment, docket no. 27, is GRANTED.  Homesite has no duty to indemnify or defend Susan P. Zajac, Joseph M. Zajac, or the Joseph M. Zajac and Susan P. Zajac Trust in the state court action *William and Janet Feldmann v. Joseph M. and Susan P. Zajac and The Joseph M. Zajac and Susan P. Zajac Trust Dated April 12, 2017*, Cause No. 19-2-07340-3 SEA currently pending in King County Superior Court.  Homesite may withdraw the defense it is currently providing the Zajacs in that action.

(2)  The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 25th day of August, 2020.

Thomas S. Zilly
United States District Judge

---

[7] The Court also notes that Defendants cite no evidence, beyond a hypothetical unsupported by citations to the record (*see* Susan P. Zajac's Opposition, docket no. 30 at 8-9), that Homesite's provision of the same counsel for the Trust and Joseph Zajac in the Underlying Action is unreasonable.  The out of circuit cases that Defendants cite regarding the duty to provide separate counsel (*Bituminous Ins. Co. v. Pennsylvania Manufacturers' Ass'n Ins. Co.,* 427 F. Supp. 539 (E.D. Pa. 1976) and *Wolpaw v. Gen. Acc. Ins. Co.,* 272 N.J. Super. 41 (App. Div. 1994)) are governed by different contract terms and state law that plainly do not apply here.

ORDER - 10